IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| TAVARRES J. HENDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 117-131 |
| | ) |
| LIEUTENANT DAVID GRIFFIN; | ) |
| SERGEANT CHRISTOPHER | ) |
| MITCHELL; OFFICER RUFFIN; and, | ) |
| DEPUTY JUSTIN POSTON, | ) |
| | ) |
| Defendants.[1] | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Autry State Prison in Pelham, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case concerning events at Charles B. Webster Detention Center ("the jail") in Augusta, Georgia. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 36), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

**I.    PROCEDURAL BACKGROUND**

Plaintiff originally named five Defendants. (See doc. no. 1.) However, because he is proceeding IFP, the Court screened the complaint, found Plaintiff had arguably stated a viable

_____

[1]The Court **DIRECTS** the **CLERK** to update the names of Defendants in accordance with the caption of this Report and Recommendation, which is consistent with the names on the affidavits submitted in support of Defendants' motion for summary judgment. (See doc. nos. 36-3, 36-4, 36-5.)

excessive force claim against Defendants and recommended dismissal of a Major at the jail who could not be held liable based solely on his supervisory position. (See doc. nos. 8, 9.) After Chief United States District Judge J. Randal Hall adopted that recommendation as the opinion of the Court, Defendants timely filed their answer on March 6, 2018, and the Clerk issued a Scheduling Notice setting deadlines for the case. (Doc. nos. 12, 14, 15.)

Consistent with the case deadlines, Defendants filed a motion for summary judgment on August 23, 2018. (Doc. no. 36.) At that time, the Clerk of Court issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. no. 38.) When Plaintiff failed to respond to Defendants' motion, the Court issued its own notice informing Plaintiff of the consequences of a summary judgment, the second such notice from the Court, with the first explanation appearing in the Court's January 8, 2018 Order. (Doc. no. 8, pp. 5-6; doc. no. 39.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.

## II.  FACTS

### A.  Plaintiff's Version of Events

On August 28, 2017, Plaintiff was detained at the jail awaiting trial on charges of carjacking, armed robbery, possession of a firearm during commission of a crime, and possession of a firearm by a convicted felon. (Pl.'s Dep., doc. no. 37, pp. 10, 43.) At approximately 9:00 p.m., after pill call, inmates in the lockdown block above Plaintiff's cell began kicking their doors and flooding their cells, resulting one hour later in "wall to wall" flooding approximately two inches deep in Plaintiff's cell. (Id. at 45-46 & Ex. 1.)

Approximately thirty minutes later, Defendants came through the emergency door next to Plaintiff's cell, and after yelling and cursing in front of Plaintiff's cell about the flooding, Defendant Griffin told the other Defendants they were to make an example of Plaintiff. (Id. at 46-47.) Defendant Ruffin used his key to open Plaintiff's cell, Defendants put on their gloves, and while Defendant Griffin held Plaintiff in a choke hold, "all of them started punching [Plaintiff] like everywhere." (Id. at 47.)

After the punching stopped and Defendant Griffin released Plaintiff from the choke hold, Defendants placed Plaintiff in handcuffs and shackles and left him until Defendant Poston removed the handcuffs and shackles at shift change. (Id. at 47-48.) After lunch the next day, August 29, 2017, Defendant Ruffin returned and asked Plaintiff if his cell was still flooding, and when Plaintiff cursed at him, Defendant Ruffin "immediately punched [Plaintiff] and shot him with his Taser." (Id. at 48.)

Plaintiff put in a sick call at the beginning of September for the headache and facial swelling he experienced from the events of August 28th. (Id. at 51-53.) He did not receive a response to his sick call but went to medical for a scheduled checkup on September 10, 2017. (Id. at 52-53.) Plaintiff told the physician about the officers punching him on August 28th, and the physician explained a scan would be useless because too much time had elapsed. (Id. at 53.) There is no medical documentation in the record of this September 10th visit.

Plaintiff was unable to provide the names of anyone who witnessed Defendants attack him, and instead can only provide names of people who saw Defendants attack other inmates. (Id. at 65, 66, 70, 71.) Although not mentioned at the deposition, there is an

unsigned statement by Mr. Gary Robinson attached to Plaintiff's complaint stating he (1) saw Defendant Griffin and four officers approach and enter Plaintiff's cell on August 28, 2017; and, (2) heard loud thumping noises and Plaintiff's cries of pain. (Doc. no. 1, p. 17.) Plaintiff also alternates between saying he does not remember who was in the cell next to him, or saying he knows the person by the name of Demarco. (Id. at 50, 66.) The cell housing history does not reflect an inmate by the name of Robinson or Demarco in Plaintiff's cell block on August 28th. (Doc. no. 42, p. 4; see also doc. no. 36-11.)

### B. Defendants' Version of Events

Defendants Griffin, Mitchell, and Poston deny by notarized affidavit they ever entered Plaintiff's pod via the emergency doors, entered Plaintiff's cell, punched him, or left him shackled and handcuffed inside his cell on August 28, 2107. (Mitchell Aff., doc. no. 36-3; Griffin Aff., doc. no. 36-4; Poston Aff., doc. no. 36-5.) Defendant Griffin avers he and Captain Turner of the Georgia Department of Corrections ("GDOC") entered Plaintiff's pod on the evening of August 28th to conduct an evaluation that lasted approximately thirty minutes and then moved on to complete an overall evaluation of the jail. (Griffin Aff. ¶¶ 3, 4.) Defendant Poston not only denies leaving Plaintiff shackled and handcuffed inside his cell, but also avers he did not enter Plaintiff's cell at or near the end of his shift on the morning of August 29, 2017. (Poston Aff. ¶ 10.)

The pod officers on shift the night of August 28th were Dodaro, Ruffin, and Jackson; Defendants Poston and Mitchell were not assigned to Plaintiff's pod. (Doc. no. 36-9.) The log book entries show a physical count of inmates was completed at 10:39 p.m., the same

approximate time Plaintiff alleges his cell was flooded wall to wall with two inches of water, but there is no notation of any flooding emergency or any other problem.  (Doc. nos. 36-7, 36-8.)  The log book does not show Defendant Poston in Plaintiff's pod at any time between the 10:39 p.m. head count and 6:00 a.m. shift change.  (Doc. no. 36-9.)  Likewise, the daily activity log reflects Defendant Ruffin was not on duty in Plaintiff's pod the day he is alleged to have tased Plaintiff after lunch, August 29, 2017, and despite a policy requiring written reports regarding discharge of a Taser, the record contains no such report about this alleged tasing.  (Doc. nos. 36-9, 36-10.)  In any event, as a member of D-shift, which ends at 6:00 a.m., Defendant Ruffin would not have been on duty after lunch.  (Doc. nos. 36-7, 36-9.)  Despite a policy requiring documentation in the duty logs of any unusual or emergency situations, the log book entries for August 28, 2017, do not give any indication of cell flooding or other emergency.  (Doc. nos. 36-6, 36-7.)  Nor does Plaintiff's daily activity log indicate any medical issues the week of August 28 through September 3, 2017.  (Doc. no. 36-9.)

Plaintiff submitted a grievance on September 8, 2017, alleging Defendants Griffin, Ruffin, and Mitchell, along with Officer Dodaro, entered his cell on August 28, 2017, and punched him in the face and stomach.  (Doc. no. 36-2.)  The grievance officer determined the grievance was unfounded because video surveillance did not show anyone coming through the emergency door or entering Plaintiff's cell and punching him.  (Doc. no. 36-2.)  Plaintiff previously had another grievance denied as unfounded when he claimed to have been tased and left in handcuffs in a restraint chair for ten hours, but video surveillance did not show any tasing or placement in a restraint chair.  (Doc. no. 36-12.)

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by

affidavits or as otherwise provided in Fed. R. Civ. P. 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.

**B.     Defendants Are Entitled to Summary Judgment Because the Record Evidence Establishes the Events Alleged by Plaintiff Never Occurred**

Plaintiff's excessive force claim arises under the Due Process Clause of the Fourteenth Amendment and requires him to show "that the force purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (U.S. 2015).

The Court has considered Plaintiff's sworn deposition testimony describing the force he contends Defendants used against him.  (See doc. no. 37.)  The information contained therein is squarely contradicted by the records submitted in support of Defendants' summary judgment motion such that Plaintiff's version of events is implausible and should not be accepted by the Court.  See Scott v. Harris, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Id.  While credibility determinations and the weighing of evidence is for the jury, Plaintiff "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no genuine issue for trial.'" Varazo v. Keiser Corp., No. 1:16-cv-4228, 2018 WL 2938871, at *2 (N.D. Ga. June 12, 2018) (citing Scott, 550 U.S. at 380). "[I]f the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict," summary judgment should be granted. Id.

Plaintiff describes a veritable revolt of inmates above him banging on their doors and causing wall to wall flooding. (Pl.'s Dep. at 45-46.) Yet the highly unusual and potentially dangerous event is recorded nowhere in the daily log book, despite a policy requiring any unusual or emergency situations be recorded therein. (Doc. nos. 36-6, 36-7.) Defendants Poston and Mitchell were not assigned to Plaintiff's pod on August 28, 2017, and Defendant Griffin was in Plaintiff's pod that evening for approximately one-half hour with a GDOC official conducting a jail evaluation. (Griffin Aff. ¶¶ 3, 4; doc. no. 36-9.) The log book does not reveal any of these Defendants were in Plaintiff's pod during the alleged use of force. (Doc. nos. 36-7, 36-9.)

Likewise, Defendant Ruffin was not on duty in Plaintiff's pod when Plaintiff claims he tased him on August 29, 2107. (Doc. no. 36-9.) Nor is there a report in the record about the discharge of a Taser, despite a policy requiring a written report regarding the discharge of a weapon in the jail. (Id.; doc. no. 36-10.) The grievance officer's review of the video surveillance did not show anyone coming through the emergency door or entering Plaintiff's cell and punching him. (Doc. no. 36-2.) The daily activity log does not document any medical issues for Plaintiff the week of the alleged beating. (Doc. no. 36-9.) There is no medical evidence in the record documenting *any* injuries or treatment for the beating Plaintiff allegedly received from the four Defendants who punched Plaintiff "everywhere," even

8

though Plaintiff testified he had terrible headaches and facial swelling after the encounter. (Pl.'s Dep. at 47, 52-53.)

Plaintiff cannot identify even one person among the inmates in his pod, or anyone else for that matter, who witnessed any of the events described in the complaint. (Id. at 65, 66, 70, 71.) To the extent Plaintiff attempts to backtrack his deposition testimony by making a belated complaint about an inability to locate other inmates who would support his version of events, such claims cannot defeat summary judgment. (Doc. no. 41, pp. 5-6.) When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of mater fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984); see also Bryant v. U.S. Steel Corp., 428 F. App'x 895, 896 (11th Cir. 2011) (*per curiam*) (affirming district court's disregard of affidavit submitted to avoid summary judgment that "squarely contradicted unequivocal testimony [the plaintiff] gave on deposition").

Nor has Plaintiff produced even one piece of documentary evidence verifying any portion of the events he alleges. To the extent Plaintiff complains officials refused to provide him with video surveillance or otherwise altered documentary evidence, the Court explained multiple times how to file a motion to compel. (Doc. no. 8, p. 5; doc. no. 29, doc. no. 32.) Plaintiff filed two motions to compel, neither of which concerned altered documents or missing video. (Doc. nos. 26, 30.) That Plaintiff chose not to pursue potential discovery issues during the designated discovery period does not excuse him from compliance with the

rules governing discovery and summary judgment.  See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); see also Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.'").

>           C.          **Plaintiff's Complaint and Affidavit Are Insufficient to Be Considered as Opposition to Defendants' Summary Judgment Motion, and Even if They Are Considered, They Do Not Change the Outcome**

Plaintiff submitted an "Affidavit," in which he recites the allegations of his complaint and concludes Defendants "did willfully commit all of the acts alleged and described in Plaintiff's complaint."  (Doc. no. 41.)  "Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment."  Howard v. Memnon, 572 F. App'x 692, 695 (11th Cir. 2014) (*per curiam*) (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)); see also Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.").

In addition, the affidavit was not notarized, but opens with the affirmation Plaintiff "solemnly swear[s] under oath that the foregoing is *true to my belief and knowledge*," and concludes with the language from 28 U.S.C. § 1746 that Plaintiff "declare(s) under penalty of perjury that the above and foregoing is true and correct."  (Doc. no. 41, pp. 1, 6 (emphasis added).)  However, an affidavit or declaration used to oppose a summary judgment motion

10

"must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).  Plaintiff's affidavit, "true to [his] belief and knowledge," cannot raise genuine issues of fact sufficient to defeat summary judgment because the statements are not based only on personal knowledge.  See Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002); Stewart v. Booker T. Washington Ins., 232 F.3d 844, 851 (11th Cir. 2000) (self-serving allegation based "upon information and belief" insufficient to carry burden at summary judgment).  Including a blanket statement an affiant has personal knowledge does not bring statements based on "information and belief" into compliance with Rule 56(c)(4). Ramsey v. GMAC Mortg. Corp., No. 3:10-cv-85, 2012 WL 13028221, at *2 (N.D. Ga. May 10, 2012) (citing Pace, 283 F.3d at 1279).

Similarly, the verification to Plaintiff's complaint states, "I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true.  I certify under penalty of perjury that the foregoing is true and correct."  (Doc. no. 1, p. 16.)  However, if a verified pleading is to be used as opposition to a summary judgment motion, it must be based on personal knowledge, not information and belief.  Harrison v. Culliver, 746 F.3d 1288, 1299 n.16 (11th Cir. 2014) (finding statement made "[t]o the best of [a plaintiff's] belief and knowledge" insufficient to create genuine issue of fact because statement not based on personal knowledge); Ramsey, 2012 WL 13028221 at *2.  There is no delineation within the complaint as to which matters are alleged on information and belief.  (See generally doc. no. 1.)  "Under these circumstances, the Court can only speculate as to which, if any, of

11

[Plaintiff's] factual allegations are based upon his personal knowledge.  Therefore, [Plaintiff] cannot rely on the facts alleged in his complaint to defeat summary judgment." Ramsey, 2012 WL 13028221 at *2.

Just as importantly, summary judgment would still be appropriate even if the Court were to consider the complaint and affidavit, which provide similar accounts as Plaintiff's deposition of the alleged precipitating flooding event and subsequent use of force.  Plaintiff's version of events "is so utterly discredited by the record that no reasonable jury could" believe him.  Scott, 550 U.S. at 380.  As such, the Court concludes Defendants have met their burden of showing the absence of evidence to support Plaintiff's claims, entitling them to judgment as a matter of law.

Because Defendants should be granted summary judgment on the merits of Plaintiff's claim, they do not need the protection of qualified immunity, and the Court therefore need not address Defendants' argument on that point.  See Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*).

### IV.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 36), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of December, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA